**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

George M. Hauss,

Petitioner,

v.

David Shinn, *et al.*,

Respondents.

No. CV-20-0097-TUC-JGZ (EJM)

**REPORT AND RECOMMENDATION**

Currently pending before the Court is Petitioner George M. Hauss's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition") (Doc. 1). Respondents have filed a Limited Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 9) and Petitioner replied (Doc. 10). The Petition is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Markovich for Report and Recommendation. The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1) as untimely.

. . .

. . .

. . .

. . .

. . .

. . .

[1] Rules of Practice of the United States District Court for the District of Arizona.

# I. FACTUAL AND PROCEDURAL BACKGROUND

## *A. Initial Charge, Trial, and Sentencing*

The Arizona Court of Appeals stated the facts[2] as follows:

> [I]n the early morning hours between December 1980 and September 1981, [Hauss] broke into the homes of ten different female victims in Tucson and terrorized them. His case became widely known as the "foot fetish" case since in almost every instance, as part of the ritual activity, appellant, kissed, fondled and/or masturbated against the victims' feet. He usually used lotion and often put stockings and or shoes on the women's feet. The weapon used in the dangerous counts was a knife. The victims were bound and gagged, usually with socks or stockings. Only one victim positively identified [Hauss] with a composite drawing, in a photo lineup and in court. Other victim identifications were consistent with [Hauss's] general appearance. [Hauss] was tied to each of the crimes by various pieces of evidence. For example, he left his tennis shoe footprints outside several of the crime scenes. The footprints were even traced to and from [Hauss's] apartment and the residence of the last victim. Tennis shoes seized from [Hauss's] residence matched these footprints. Also found in [Hauss's] apartment were items taken from the victims' residences including keys, jewelry and stereo equipment. [Hauss] sold one victim's tape recorder to his co-worker. He sold another victim's rare Russian 100 ruble coin to a coin dealer and signed a receipt for it. He still had a copy of this receipt on him in his possession when he was arrested. Some victims had described their attacker as wearing red shorts with white stripes. Such shorts were seized from [Hauss's] residence. [Hauss] also left his fingerprints inside or at the points of entry to several of the crime scenes. Hair analysis and analysis of semen stains were consistent with [Hauss] having been the attacker in various cases.
>
> Other facts also tied the incidents together. For example, [Hauss] had disabled the telephone in several of the residences, and usually carried a flashlight to help him rummage around. He invariably asked for food, money and valuables and attempted to disguise his identity by changing his voice, pretending to be unfamiliar with the area, or making derogatory comments about white people. There were also indications that he had watched the victims and knew that they were living alone or with only their minor

---

[2] As these state court findings are entitled to a presumption of correctness and Petitioner has failed to show by clear and convincing evidence that the findings are erroneous, the Court hereby adopts these factual findings. 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007); *Wainwright v. Witt*, 469 U.S. 412, 426, 105 S. Ct. 844, 853, 83 L. Ed. 2d 841 (1985); *Cf. Rose v. Lundy*, 455 U.S. 509, 519, 102 S. Ct. 1198, 1204, 71 L. Ed. 2d 379 (1982).

> children or a female roommate. Furthermore, in a conversation which was taped by the police, [Hauss] admitted to his girlfriend that he did touch the feet of these women but denied that he had ever raped any of them.

*State v. Hauss*, 688 P.2d 1051, 1053 (Ariz. Ct. App. 1984). Petitioner "was convicted, by a jury, of three counts of second-degree burglary, class 3; one count of aggravated assault, class 6; nine counts of kidnapping, class 2; five counts of sexual abuse, class 5; three counts of sexual assault, class 2; six counts of first-degree burglary, class 2; and one count of attempted sexual abuse, class 6." *Id.* at 1052–53. "Some of the crimes were found to be repetitive and dangerous and [Petitioner] was given aggravated, concurrent sentences on the first group of crimes which range[d] from 1.875 years to 35 years in prison." *Id.* at 1053. "The sentences on the second group of crimes range[d] as high as 35 years in prison, [and] were concurrent with each other, but consecutive to the sentences imposed for the first group of crimes. *Id.* On August 27, 1982, Petitioner's sentence was imposed and totaled seventy (70) years imprisonment. Petition (Doc. 1) at 1.

### *B. Direct Appeal*

Petitioner filed a direct appeal "contend[ing] that the trial court erred by (1) admitting into evidence a taped statement between [Hauss] and his girlfriend in violation of [Hauss's] rights under the United States Constitution, the Arizona Constitution and federal law; (2) failing to grant a mistrial when the state referred in closing argument to evidence which had been excluded by the trial court; (3) failing to grant [Hauss's] motion for directed verdict for the failure of the state to prove that [Hauss] was not the spouse of the alleged victims; (4) allowing L.K. to identify [Hauss] as the perpetrator [sic] of the assault against her, and (5) denying him a fair trial due to the state's failure to adequately preserve evidence which may have been exculpatory in nature." *State v. Hauss*, 688 P.2d 1051, 1053 (Ariz. Ct. App. 1984). On May 24, 1984, the Arizona Court of Appeals affirmed Petitioner's convictions and sentence. *See id.*

The court of appeals addressed each of these allegations in turn. *See id.* Petitioner claimed that the trial court erred in denying his motion to suppress the tape recording. *Id.* at 1053–54. The appellate court observed that:

> [The] facts show that after being arrested and transported to the police station, [Hauss] was placed in an interview room. One of the officers, Sergeant Johnson, related some of the evidence against appellant and gave him his *Miranda* warnings. Appellant stated he would discuss the crimes with the police if they would first let him speak with his live-in girlfriend. The police agreed and allowed appellant to telephone her. When she arrived, she was escorted to the interview room. Johnson told her he did not want any "funny business", and did not want her to pass a weapon or anything else to appellant. He told her that the room was being monitored, and she replied either "OK" or "All right". . . . Appellant and his girlfriend were left alone in the room. The tape recording reveals that they whispered during part of their conversation.

*Id.* at 1054. The appellate court agreed with the trial court's findings that "(1) The girlfriend was aware the conversation would be monitored and impliedly consented to the recording; (2) she was not an agent of the state; (3) there was no government interrogation nor were the statements elicited by a functional equivalent of governmental interrogation nor government conduct; (4) the monitoring was a reasonable means of maintaining security at the police station; (5) any expectation of privacy was outweighed by the need to maintain security; [and] (6) the statements were not obtained in violation of any constitution or statute." *Hauss*, 688 P.2d at 1054. The appellate court concluded that "[once] the government establishes that its intrusion is for a justifiable purpose of imprisonment or prison security, the Fourth Amendment question is essentially resolved in its favor." *Id.* at 1055 (citing *United States v. Hearst*, 563 F.2d 1331 (9th Cir. 1977)). Regarding Petitioner's contention that the tape recording was a violation of federal wiretap law, the appellate court concluded that "[i]t [wa]s clear that the tape recording did not constitute a wire communication within the meaning of the act, since it involved no facility furnished or operated by a common carrier[,] . . . [and] the conversation was outside the statutory definition of 'oral communication' since there was no reasonable expectation of privacy in a situation such as this[.]" *Id.* at 1056 (citations omitted). The appellate court reiterated its finding that Hauss and his girlfriend could not have had a reasonable expectation of privacy in the interview room, and held that there was no violation of

Arizona state law. *Id.* Regarding Hauss's constitutional claims, the appellate court further found that because his girlfriend was not an agent of the state, and there was no interrogation by her, Hauss's rights to remain silent and be free of self-incrimination were not violated. *Id.* Because Hauss had not been charged, the appellate court held that his Sixth Amendment right to counsel had not attached. *Hauss*, 688 P.2d at 1056 (citing *State v. Ortiz*, 131 Ariz. 195, 639 P.2d 1020 (1981)). Additionally, the appellate court determined that his confrontation rights were not violated, because Hauss's girlfriend's "statements on tape were not offered for the truth of any material fact asserted[,] [t]hey were merely offered to show that they were spoken." *Id.* at 1056–57.

Next, the appellate court considered the prosecutor's reference to the transcript of Hauss and his girlfriend's tape recorded conversation. *Id.* at 1057. "During the trial the state sought to introduce into evidence not only the tape recording but also the state-prepared transcript of that conversation[,] [but] [t]he trial court ruled that the transcript of the conversation would not be admitted into evidence." *Id.* Petitioner's counsel moved for a mistrial at the close of the prosecution's closing argument because the prosecutor referenced the transcript, and such reliance was improper and prejudicial. *Id.* The trial court denied the motion for mistrial. *Hauss*, 688 P.2d at 1057. The appellate court upheld the trial court's ruling that "for all the jury knew, [the prosecutor] had been reading from her notes, and since the jurors were instructed that statements of counsel were not evidence, there could be no supposition that they would treat her version of the tape as evidence." *Id.* The appellate court further found that Petitioner could not show prejudice. *Id.*

Third, the appellate court considered Petitioner's argument that "the state failed to prove that the eight victims of the sex crimes were not [his] spouse." *Id.* The court found Petitioner's argument "entirely devoid of merit[,]" and held that "[t]he circumstantial evidence . . . proves that none of the victims were [Hauss's] spouses. *Id.* (citing *State v. Rainey*, 672 P.2d 188 (Ariz. Ct. App. 1983)).

The appellate court next addressed Petitioner's claims that a victim's identification of his in a photo lineup, as well as her in-court-identification was tainted by unduly

suggestive pretrial procedures. *Hauss*, 688 P.2d at 1057. The appellate court found "that the trial court did not abuse its discretion in ruling that the victim's in-court-identification of [Hauss] was admissible." *Id.* The court further found that the identification procedure was initially fair, and therefore a policeman's comments such as those alleged by Petitioner would not taint that fair procedure. *Id.* at 1058 (citing *State v. Romero*, 634 P.2d 954 (Ariz. 1981)).

Finally, the appellate court considered Petitioner's contention that "the trial court erred in admitting the blood group sample because it failed to preserve the evidence." *Id.* (citing *Baca v. Smith*, 604 P.2d 617 (Ariz. 1979); then citing *Scales v. City of Mesa*, 594 P.2d 97 (Ariz. 1979)). The appellate court held "that this objection was waived since appellant failed to make it one of his grounds for his motion to suppress." *Id.* The appellate court further found that even if there was error, "it was harmless beyond a reasonable doubt[.]" *Hauss*, 688 P.2d at 1058. Accordingly, the appellate court affirmed Petitioner's convictions and sentences. *Id.*

On September 25, 1984, the Arizona Supreme Court denied review. *See Hauss*, 688 P.2d 1051 (Ariz. Ct. App. 1984) (notation in header).

### *C. Post-Conviction Relief ("PCR") Proceeding*

#### 1. <u>Initial PCR Proceeding</u>

On February 25, 2002, Petitioner filed his first Notice of PCR seeking resentencing due to a significant change in the law. Answer (Doc. 9), *State v. Hauss*, No. CR06642-001, Ruling—In Chambers Ruling on Remand – Def.'s Pet. for PCR at 8 (Pima Cnty. Super. Ct. Jan. 28, 2019) (Exh. "Q") (Doc. 9-2). On June 27, 2002, the Hon. Debra Bernini appointed Rule 32 counsel and ordered that the record be prepared. *Id.* On October 9, 2022, Judge Bernini extended the due date for the Rule 32 petition by sixty (60) days. *Id.* On September 25, 2003, Petitioner filed a motion to dismiss the Rule 32 petition. *Id.* The motion to dismiss was signed by both Petitioner and his Rule 32 counsel. *Id.* On October 17, 2003, Judge Bernini granted Petitioner's motion to dismiss his Rule 32 petition, noting that no petition had been filed. Answer (Doc. 9), Exh. "Q" at 9.

**2. Second Notice and PCR**

On July 21, 2017, Petitioner filed his second Notice of PCR. Answer (Doc. 9), Not. of PCR, *State v. Hauss*, Nos. CR-06642 and CR-06792 (Pima Cnty. Super. Ct. July 21, 2017) (Exh. "B") (Doc. 9-1). Petitioner indicated that he was raising a claim of ineffective assistance of counsel,[3] and there had been "a significant change in the law, if applied to the defendant's case, would probably overturn the conviction or sentence." *Id.*, Exh. "B" at 13. Petitioner further indicated that "[t]his is my second P.C.R. petition[;] [t]herefore[,] this is the first time I may raise an ineffective assistance of counsel claim on my P.C.R. counsel." *Id.*, Exh. "B" at 13–14. Petitioner alleged that he "was never informed by my counsel or the Court that I could present this claim." *Id.*, Exh. "B" at 14. Petitioner also alleged that he had acted with "due diligence" in presenting his PCR claims. *Id.*

On August 24, 2017, Petitioner filed a Petition for Reconsideration. Answer (Doc. 9), Pet. for Reconsideration, *State v. Hauss*, Nos. CR06799 and CR06642 (Pima Cnty. Super. Ct. Aug. 24, 2017) (Exh. "D") (Doc. 9-1). Petitioner alleged that he was "neither time barred nor precluded from raising any of [his] claims." Answer (Doc. 9), Exh. "D" at 20. Petitioner indicated that he had been sentenced pursuant to Section 13-604 of the Arizona Revised Statutes. *Id.*, Exh. "D" at 21. Petitioner described "[t]he Hannah-prior practice [as] result[ing] in 'repeat-offender' mandatory prison terms under section 13-604 for Defendants who, like [Petitioner], had no felony convictions until being sentenced on several at the same time."[4] *Id.*, Exh. "D" at 21. Petitioner asserted that as of January 1, 1994, "the Legislature ended this harsh practice by deleting certain language from section 13-604(H) and by enacting section 13-702.02." *Id.*, Exh. "D" at 21–22. Petitioner expressed his belief that his case was not final, and urged that the statute implementing

---

[3] In his Notice of PCR, Petitioner listed his counsel as follows: for trial, Baker-Sipe; direct appeal, Susan Kettlawell; and PCR, Michael J. Bloom, P.C. Answer (Doc. 9), Exh. "B" at 13. In his Petition (Doc. 1), however, Petitioner referred to Jill Thorpe as his PCR counsel. Petition (Doc. 1) at 3; *see also* Answer (Doc. 9), Pet. for Reconsideration at 21, *State v. Hauss*, Nos. CR06799 and CR06642 (Pima Cnty. Super. Ct. Aug. 24, 2017) (Exh. "D") (Doc. 9-1).

[4] *State v. Hannah*, 126 Ariz. 575, 617 P.2d 527 (1980).

*Hannah* priors was unconstitutional, and its modification represented a significant change in the law that "would in all likely hood [sic] change [his] sentence." Answer (Doc. 9), Exh. "D" at 24–25. Petitioner also asserted that his trial counsel was ineffective because he allegedly failed to challenge the constitutionality of A.R.S. § 13-604, and gave Petitioner "bad advice which caused [him] to reject a 20 year Plea offer[,]" particularly in allegedly failing to "properly and professionally convey to his client the 'significant' difference between the plea offered and the potentially long sentence he faced should he refuse the plea offer." *Id.*, Exh. "D" at 25–26.

On September 8, 2017, the Rule 32 court denied Petitioner's motion for reconsideration as moot, because it had consolidated Petitioner's cases and granted Rule 32 counsel. Answer (Doc. 9), *State v. Hauss*, Nos. CR06792 and CR06642, Ruling—Criminal Ruling Re: Def.'s Pet. for Recon. (Pima Cnty. Super. Ct. Sept. 8, 2017) (Exh. "E") (Doc. 9-1). On November 16, 2017, PCR counsel filed a notice pursuant to *Montgomery v. Sheldon (I)*,[5] in which counsel stated that there were "no legal issues of merit" appropriate for Rule 32 relief.[6] *See* Answer (Doc. 9), Pet.'s Not. of Review, *State v. Hauss*, No. CR06642 (Pima Cnty. Super. Ct. Nov. 16, 2017) (Exh. "F") (Doc. 9-1).

On December 14, 2017, Petitioner filed his Pro Per Brief. Answer (Doc. 9), Petr.'s Pro Per Brief, *State v. Hauss*, Nos. CR-06642 and CR-06792 (Pima Cnty. Super. Ct. Dec. 14, 2017) (Exh. "G") (Doc. 9-1). Petitioner asserted that because his sentenced was enhanced by *Hannah* priors, it was illegal. *Id.*, Exh. "G" at 35–37, 45–47. Petitioner maintained that because his sentence was illegal, his challenge could not be time-barred,

---

[5] *Montgomery v. Sheldon (I)*, 181 Ariz. 256, 889 P.2d 614 (1995).

[6] The Arizona Supreme Court has held that in Rule 32 proceedings, where counsel concludes that the proceeding has no merit, "a pleading defendant has a right under Ariz. Const. art. 2 § 24 to file a *pro se* PCR petition." *Montgomery (I)*, 181 Ariz. at 260, 889 P.2d at 618. Subsequently, the Arizona Supreme Court affirmed this rule and reiterated:

> If, after conscientiously searching the record for error, appointed counsel in a PCR proceeding finds no tenable issue and cannot proceed, the defendant is entitled to file a pro se PCR.

*State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996).

and retroactivity was not an issue. *Id.*, Exh. "G" at 37. Petitioner further asserted that the repealing of A.R.S. § 13-604 on January 1, 2009, was based on a recognition that the statute was unconstitutional. *Id.*, Exh. "G" at 39, 46. Petitioner argued that because the statute was unconstitutional, his sentence was invalid. *Id.*, Exh. "G" at 39–40. Petitioner observed that he "could not bring this to the attention of this Court sooner because it was unknown to him, [and] with due diligence he [brought] it to [its] attention now." Answer (Doc. 9), Exh. "G" (Doc. 9-1) at 40. Next, Petitioner claimed ineffective assistance of trial counsel. *Id.*, Exh. "G" at 41. Petitioner alleged that his trial counsel "never explained to [him] the consequences [he] was facing if [he] did not take the plea agreement." *Id.* Petitioner asserted that he was prejudiced by this failure, and received a much longer sentence after trial than was contained in the plea offer. *Id.*, Exh. "G" at 41–42. Petitioner urged that "[i]f [his] Counsel [had] properly informed [him] to the consequences of going to trial versus taking a plea, [he] would have accepted the plea agreement and it would have been presented to the Court" *Id.*, Exh. "G" at 43. Petitioner also argued that his trial counsel "was ineffective for failing to challenge the Constitutionality of the Arizona Revised Statute 13-604." Answer (Doc. 9), Exh. "G" (Doc. 9-1) at 48. Petitioner contended that this alleged failure prejudiced Petitioner by not preserving the issue for appeal. *Id.*, Exh. "G" at 48–51. Petitioner additionally alleged that PCR counsel's performance was similarly deficient. *Id.*, Exh. "G" at 52–54. Along with this argument, Petitioner mentioned the Equal Protection Clause and asserted that "[t]he argument can be made that had my counsel raised this Constitutional issue or at the very least preserved it for appeal, [Petitioner] would have as well been afforded the legally reworded benefits of § 13-604(M) as it did other defendants." *Id.*, Exh. "G" at 53. In conclusion, Petitioner suggested the Rule 32 court could rule on the merits based upon 1) a significant change in the law; 2) newly discovered material facts; 3) a constitutional challenge to A.R.S. § 13-604; or 4) ineffective assistance of counsel. *Id.*, Exh. "G" at 56–57.

Subsequently, the State responded, and Petitioner replied. Answer (Doc. 9), State's Response to Pro Per Br., *State v. Hauss*, Nos. CR06642 and CR06792 (Pima Cnty. Super.

Ct. Feb. 12, 2018) (Exh. "H") (Doc. 9-1); Answer (Doc. 9), Petr.'s Pro Per Reply Br., Nos. CR-06642 and CR-06792 (Pima Cnty. Super. Ct. Mar. 8, 2018) (Exh. "I") (Doc. 9-1).

### 3. Second PCR Order

On April 2, 2018, the Rule 32 court denied Petitioner's petition. *See* Answer (Doc. 9), *State v. Hauss*, No. CR06642, Ruling—In Chambers Ruling Re: Def.'s Pet. for PCR (Pima Cnty. Super. Ct. Apr. 2, 2018) (Exh. "J") (Doc. 9-1). The Rule 32 court reviewed the requirements of Rule 32, Arizona Rules of Criminal Procedure, and observed that "[a] viable post-conviction relief petition requires a Petitioner to present a colorable claim, which is 'one that, if the allegations are true, might have changed the outcome.'"[7] *Id.*, Exh. "J" at 106 (quoting *State v. Runningeagle*, 859 P.2d. 169, 173 (Ariz. 1993)). First, the Rule 32 court addressed Petitioner's claims that his sentence was imposed in violation of the United States or Arizona constitutions, which included his allegations that he received ineffective assistance of counsel and the sentencing statute was unconstitutional. *Id.*, Exh. "J" at 107. The court determined that both of these claims were precluded, because they did not fall under any exception contained in Rule 32.1(d) through (h), Arizona Rules of Criminal Procedure. *Id.* As such, the Rule 32 court held that both claims were untimely. *Id.* (citing Ariz. R. Crim. P. 32.4(c)(2)). Next, the Rule 32 court considered Petitioner's claim regarding newly discovered material facts and held that "[n]o newly discovered facts were actually offered by [Petitioner] in his petition, thus he d[id] not meet the criteria for relief under Rule 32.1(e)." Answer (Doc. 9), Exh. "J" (Doc. 9-1) at 107–108. Finally, the Rule 32 court discussed Petitioner's argument regarding the *Hannah* priors in sentencing and his claim of a significant change in the law which would overturn his sentence. *Id.*, Exh. "J" at 108. The Rule 32 court determined that "[t]his elimination of statutory language does not apply retroactively, and does not provide relief under Rule 32.1(g)." *Id.* As such, the court denied relief. *Id.*

. . .

---

[7] Specifically, the Court reviewed the requirements delineated in Rules 32.1, 32.2, and 32.4 of the Arizona Rules of Criminal Procedure.

**4. Second PCR Reconsideration**

On April 13, 2018, Petitioner filed a Motion for Reconsideration. Answer (Doc. 9), Petr.'s Mot. for Recons., *State v. Hauss*, No. CR06642 (Pima Cnty. Super. Ct. Apr. 13, 2018) (Exh. "K") (Doc. 9-1). Petitioner urged that because he was sentenced prior to "the 1992 change in Post-Conviction Relief Procedure's [sic] . . . [he] [wa]s not subject to the limitations now contained in the text of rule 32." *Id.*, Exh. "K" at 110 (citations omitted). Petitioner again referenced newly discovered evidence as a ground for relief. *Id.*, Exh. "K" at 112. Petitioner further asserted that he had "presented his claim pursuant to Rule 32.1(e) which is not time barred nor precluded[,] [and] [a]lthough the defendants claim has a direct connection to Rule 32.1(a) and (g)[,] [i]t was not known to the defendant at the time of his trial." *Id.*, Exh. "K" at 114. Petitioner then reiterated his claims of a significant change in the law, which if not applied to him would result in an equal protection violation, and ineffective assistance of counsel. *Id.*, Exh. "K" at 114–18. On April 26, 2018, the Rule 32 court summarily denied Petitioner's motion. *See* Answer (Doc. 9), *State v. Hauss*, No. CR06642, Ruling—In Chambers Re: Def.'s Mot. for Reconsideration (Pima Cnty. Super. Ct. Apr. 26, 2018) (Exh. "L") (Doc. 9-1).

**5. Second PCR—Initial Appeal**

On May 11, 2018, Petitioner sought review of the denial of his PCR petition by the Arizona Court of Appeals. *See* Answer (Doc. 9), Petr.'s Pet. for Review, *State v. Hauss*, No. 2 CA-CR 18-0146-PR (Ariz. Ct. App. May 11, 2018) (Exh. "M") (Doc. 9-1). Petitioner asserted that his "entire claim is based on Newly Discovered Material facts Rule 32.1(e)." *Id.*, Exh. "M" at 124. Pointing to his status as a layperson and the lack of resources in the prison, Petitioner alleged that he "had no means to discover trial or sentencing errors elucidating the errors in the foregoing petition except by other inmates that have outside prison resources. *Id.*, Exh. "M" at 124–25. Petitioner urged that a "[c]laim of ineffective assistance of counsel maybe [sic] newly discovered evidence if based on facts not known to defendant at the time of trial." *Id.*, Exh. "M" at 127. Petitioner outlined his claims to include ineffective assistance of trial counsel for an alleged failure

to explain the consequences of going to trial rather than taking a plea, for allegedly recommending that Petitioner go to trial, and for not investigating mitigating factors prior to sentencing; the unconstitutionality of the Arizona sentencing statute; whether there was a significant change in the law; and whether that change was applicable to Petitioner's case. *Id.*, Exh. "M" at 128–29.

On June 11, 2018, the Arizona Court of Appeals issued its Order that the petition for review appeared to be untimely and giving Petitioner ten (10) days to show cause why it should not be dismissed. Answer (Doc. 9), *State v. Hauss*, No. 2 CA-CR 2018-0146-PR, Order (Ariz. Ct. App. June 11, 2018) (Exh. "N") (Doc. 9-1). On June 18, 2018, Petitioner filed his response to the show cause order. Answer (Doc. 9), Petr.'s Pet. to Show Why My Pet. for Review Should Not Be Dismissed, *State v. Hauss*, No. 2 CA-CR 2018-0146-PR (Ariz. Ct. App. June 18, 2018) (Exh. "O") (Doc. 9-1). Petitioner provided the appellate court with a timeline of his filings and receipt of various court orders. *Id.*

On September 18, 2018, the Arizona Court of Appeals granted review, and granted relief in part and denied relief in part. Answer (Doc. 9), *State v. Hauss*, No. 2 CA-CR 2018-0146-PR, Mem. Decision (Ariz. Ct. App. Sept. 18, 2018) (Exh. "P") (Doc. 9-2). The appellate court "agree[d] with the trial court that Hauss is not entitled to relief based on his claims of newly discovered evidence and a significant change in the law, [and] not[ed] that he direct[ed] [it] to no newly discovered evidence and cite[d] no meaningful, persuasive authority suggesting the changes to § 13-604 were intended to apply retroactively to him." *Id.*, Exh. "P" at 5 (citing Ariz. R. Crim. P. 32.1(e), (g)). As such, the appellate court "adopt[ed] that portion of the court's ruling related to those claims." *Id.*, Exh. "P" at 5 (citing *State v. Whipple*, 866 P.2d 1358, 1360 (Ariz. Ct. App. 1993)). The appellate court also declined "to treat [Petitioner's] claim of ineffective assistance of counsel as one of newly discovered evidence because he did not have the means to discover it earlier, thereby excepting it from the rule of preclusion[.]" *Id.*, Exh. "P" at 5. Because the appellate court was "unable to confirm whether the court dismissed Hauss's first notice of post-conviction relief without prejudice[,]" and it could not "determine from the trial court's ruling on what

basis it rejected Hauss's argument that the timeliness requirements of Rule 32.4 do not apply to him[,]" it "remand[ed] the case and direct[ed] the court to determine whether this [wa]s Hauss's first petition for post-conviction relief." *Id.*, Exh. "P" at 6. The appellate court further observed that if this was Petitioner's first petition, it was not untimely. *Id.*

**6. <u>Second PCR—Order Upon Remand</u>**

On January 28, 2019, the Rule 32 court issued its order on remand. Answer (Doc. 9), *State v. Hauss*, No. CR-06642-001, Ruling—In Chambers Ruling on Remand – Def.'s Pet. for PCR (Pima Cnty. Super. Ct. Jan 28, 2019) (Exh. "Q") (Doc. 9-2). The Rule 32 court reviewed the procedural history and rulings regarding Petitioner's PCR proceedings. *Id.*, Exh. "Q" at 8–9. Next, the Rule 32 court incorporated by reference the portion of its April 2, 2018, ruling "which was not remanded and for which relief was denied[.]" *Id.*, Exh. "Q" at 9. The Rule 32 court explained that "[i]n its April 2, 2018, ruling, [it] concluded that the notice for post-conviction relief in 2017 was a successive filing and that the requested relief could have been raised at the time of the filing of the notice of post-conviction relief in 2002." *Id.*, Exh. "Q" at 9. "[Relying] on the Arizona Supreme Court's decision in *State v. Shrum*, 220 Ariz. 115, 203 P.3d 1175 (2009)[,]" the court found that Petitioner's voluntary dismissal following the filing of a notice of post-conviction relief, but prior to the filing of a petition, constituted a first petition. Answer (Doc. 9), Exh. "Q" at 9–10. The Rule 32 court observed that "[t]he *Shrum* court specifically noted that 'a PCR proceeding is commenced by filing a notice of PCR in the court that rendered the conviction.'" *Id.*, Exh. "Q" at 10 (quoting *Shrum*, 220 Ariz. at 120 n.6)). Accordingly, the Rule 32 court held that "the defendant in this case could have asserted his claim for ineffective assistance of counsel and his challenge on the constitutionality of the sentencing statute after filing his first notice in 2002[,] [and] [h]is decision to dismiss the Rule 32 proceeding, which was made while represented by counsel, act[ed] as a waiver of these claims." *Id.*, Exh. "Q" at 10.

**7. <u>Second PCR Post-Remand Appeal</u>**

On February 18, 2019, Petitioner sought review by the Arizona Court of Appeals of

the denial of his PCR petition after remand. *See* Answer (Doc. 9), Petr.'s Pet. for Review, *State v. Hauss*, No. 2 CA-CR 19-0053-PR (Ariz. Ct. App. Feb. 18, 2019) (Exh. "R") (Doc. 9-2). Petitioner sought review regarding whether Judge Bernini abused her discretion by allegedly dismissing his initial Notice of PCR "without prejudice." *Id.*, Exh. "R" at 12–13. Petitioner further asked if his PCR counsel was ineffective. *Id.*

On April 23, 2019, the Arizona Court of Appeals granted review, but denied relief. Answer (Doc. 9), *State v. Hauss*, No. 2 CA-CR 2019-0053-PR, Mem. Decision (Ariz. Ct. App. Apr. 23, 2019) (Exh. "S") (Doc. 9-2). The appellate court observed that Petitioner's "September 2003 motion to dismiss his first Rule 32 proceeding, signed by both Hauss and his former Rule 32 counsel, . . . did not request dismissal without prejudice, nor did the court's October 2003 order granting that motion contain any such language." *Id.*, Exh. "S" at 34. Additionally, the appellate court confirmed that "Hauss's first post-conviction proceeding was commenced by the filing of the *notice* of post-conviction relief in 2002." *Id.*, Exh. "S" at 34 (emphasis in original) (citing Ariz. R. Crim. P. 32.4(a)(1)). Regarding Petitioner's argument that the time limitations in Rule 32 were inapplicable to him because he was sentenced before 1992, the appellate court observed that "the order promulgating the 1992 amendments made them 'applicable to all post-conviction relief petitions filed on and after September 30, 1992, except that the time limits of 90 and 30 days imposed by Rule 32.4 shall be inapplicable to a defendant sentenced prior to September 30, 1992, who is filing his first petition for post-conviction relief.'" *Id.*, Exh. "S" at 34–35 (quoting 171 Ariz. XLIV (1992)). The appellate court held that "because Hauss filed his first notice of post-conviction relief in 2002, which he voluntarily moved to dismiss in 2003, the trial court properly found his 2017 post-conviction proceeding successive." *Id.*, Exh. "S" at 35 (citing Ariz. R. Crim. P. 32.4(a)(1)). As part of Petitioner's argument that the lower court failed to address the propriety of the 2003 dismissal order, the appellate court considered a letter written to Petitioner by his Rule 32 counsel and determined that "counsel's letter does not establish that she intended to request a dismissal without prejudice, as Hauss maintains, or that she advised him to seek that outcome." Answer (Doc. 9), Exh. "S" (Doc. 9-2) at

36. The appellate court upheld the lower court's decision not to address counsel's conduct in that regard. *Id.*

On May 7, 2019, Petitioner sought reconsideration of the appellate court's ruling. Answer (Doc. 9), Petr.'s Pet. for Reconsideration, *State v. Hauss*, No. 2 CA-CR 2019-0053-PR (Ariz. Ct. App. May 7, 2019) (Exh. "T") (Doc. 9-2). Petitioner reiterated the arguments that he had raised in his petition for review. *See id.* On May 9, 2019, the appellate court denied reconsideration. Answer (Doc. 9), *State v. Hauss*, No. 2 CA-CR 2019-0053-PR, Order (Ariz. Ct. App. May 9, 2019) (Exh. "U") (Doc. 9-2).

Petitioner sought review by the Arizona Supreme Court, which was denied on January 21, 2020. Answer (Doc. 9), *State v. Hauss*, No. CR-19-0174-PR, Mem. (Ariz. Jan. 21, 2020) (Exh. "V") (Doc. 9-2). On February 7, 2020, the Arizona Court of Appeals issued its mandate. Answer (Doc. 9), *State v. Hauss*, No. 2 CA-CR 2019-0053-PR, Mandate (Ariz. Ct. App. Feb. 7, 2020) (Exh. "W") (Doc. 9-2).

***D. The Instant Habeas Proceeding***

On March 9, 2020, Petitioner filed his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1). Petitioner asserts three (3) grounds for relief. First, Petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights when he received ineffective assistance of counsel because his trial counsel "did not explain the consequences of going to trial versus taking a plea"; gave Petitioner "bad advice to go to trial rather than take the 20 year plea offer"; and did not challenge the constitutionality of the sentencing statute. Petition (Doc. 1) at 5. Petitioner also alleged ineffective assistance of his post-conviction counsel "for not bringing an ineffective assistance of counsel claim[,] as well as not challenging the constitutionality of the sentencing statute." *Id.* Second, Petitioner asserts that the statute he was sentenced under, Arizona Revised Statutes section 13-604(H), is unconstitutional, and therefore violated his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 7. Third, Petitioner alleges a "significant change in the law" and argues that the State's failure to apply the "substantive remedial amendment" of Arizona Revised States section 13-604(H) to his case violated

Petitioner's Fifth, Sixth, and Fourteenth Amendment rights. *Id.* at 8.

On June 1, 2020, Respondents filed their Limited Answer (Doc. 9), and Petitioner replied (Doc. 10).

## II. STATUTE OF LIMITATIONS

### *A. Timeliness*

As a threshold matter, the Court must consider whether Petitioner's petition is barred by the statute of limitation. *See White v. Klizkie*, 281 F.3d 920, 921–22 (9th Cir. 2002). The AEDPA mandates that a one-year statute of limitations applies to applications for a writ of habeas corpus by a person in state custody. 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that the limitations period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); *Shannon v. Newland*, 410 F.3d 1083 (9th Cir. 2005). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

The other subsections being inapplicable, Petitioner must have filed his habeas petition within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *see also McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924,

1929, 185 L. Ed. 2d 1019 (2013). On May 24, 1984, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences on direct review. *See State v. Hauss*, 688 P.2d 1051 (Ariz. Ct. App. 1984). Petitioner sought review with the Arizona Supreme Court, which denied review on September 25, 1984. *See id.* (notation in header). As such, Petitioner's judgment became final on December 24, 1984, after the expiration of the ninety (90) day period to file a petition for certiorari from the Supreme Court of the United States. *Bowen v. Roe*, 188 F.3d 1157, 1160 (9th Cir. 1999). "State prisoners . . . whose convictions became final prior to AEDPA's enactment, had a one-year grace period in which to file their petitions." *Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

As such, pursuant to the AEDPA, Petitioner's one-year limitation period expired, absent tolling, on December 24, 1985. *See White*, 281 F.3d at 924 ("[T]he question of when a conviction becomes final, so as to start the running of the statute of limitations under § 2244(d)(1)(A), is fundamentally different from the question of how long the statute of limitations is tolled under § 2244(d)(2)."). Petitioner filed his Petition (Doc. 1) on March 9, 2020. Therefore, absent tolling, the Petition (Doc. 1) is untimely.

***B. Statutory Tolling of the Limitations Period***

The limitations period is tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2); *Allen v. Siebert*, 552 U.S. 3, 4, 128 S. Ct. 2, 3, 169 L.Ed.2d 329 (2007). An application for State post-conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000). Statutory tolling of the limitations period ends "[a]fter the State's highest court has issued its mandate or denied review, [because] no other state avenues for relief remain open." *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S. Ct. 1079, 1083, 166 L. Ed. 2d 924 (2007); *see also Hemmerle v. Schriro*, 495 F.3d 1069, 1077 (9th Cir. 2007) (collateral proceeding "determined" when the Arizona Supreme Court denied petition for review).

"[I]n Arizona, post-conviction 'proceedings begin with the filing of the Notice.'" *Hemmerle*, 495 F.3d at 1074 (quoting *Isley v. Arizona Dept. of Corrections*, 383 F.3d 1054 (9th Cir. 2004)). Petitioner filed his initial Notice of Post-Conviction Relief on February 25, 2002. Answer (Doc. 9), *State v. Hauss*, No. CR06642-001, Ruling—In Chambers Ruling on Remand – Def.'s Pet. for PCR at 8 (Pima Cnty. Super. Ct. Jan. 28, 2019) (Exh. "Q") (Doc. 9-2). At this point, AEDPA's statute of limitations period had already expired. Accordingly, the Court finds, absent equitable tolling, Petitioner's Petition (Doc. 1) is untimely.

***C. Equitable Tolling of the Limitations Period***

The Supreme Court of the United States has held "that § 2244(d) is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645, 130 S. Ct. 2549, 2560, 177 L. Ed. 2d 130 (2010). The Ninth Circuit Court of Appeals "will permit equitable tolling of AEDPA's limitations period only if extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999) (quotations and citations omitted). Moreover, Petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814, 161 L. Ed. 2d 669 (2005); *see also Holland*, 130 S. Ct. at 2562 (quoting *Pace*).

Petitioner's Petition (Doc. 1) are devoid of any facts to support that he had been pursuing his rights diligently. Furthermore, Petitioner has failed to meet the "very high threshold" of establishing that extraordinary circumstances beyond his control made it impossible for him to timely file a habeas petition *and* that those extraordinary circumstances were the cause of his untimeliness. *United States v. Battles*, 362 F.3d 1195, 1197 (9th Cir. 2004). As such, Petitioner is not entitled to equitable tolling and his habeas petition is untimely. The Court recommends that Petitioner's Petition (Doc. 1) be denied because it is untimely.

## III. CONCLUSION

Based upon the foregoing, the Court finds that Petitioner's Petition (Doc. 1) is untimely and should be denied.

## IV. RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). No replies shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CV-20-0097-TUC-JGZ**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 18th day of November, 2022.

Eric J. Markovich
United States Magistrate Judge